**2025 IL 130626**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130626)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
KENDALL CECIL MORGAN, Appellant.

*Opinion filed February 6, 2025.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Justices Neville, Holder White, and Cunningham concurred in the judgment and opinion.

Justice Overstreet specially concurred, with opinion, joined by Chief Justice Theis and Justice Rochford.

**OPINION**

¶ 1        Defendant, Kendall Cecil Morgan, appeals from a detention order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), which was recently amended by Public

Act 101-652 , § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] The sole issue for our consideration is to determine the appropriate standard of review a reviewing court is to apply when reviewing a circuit court's ultimate detention decision under section 110-6.1 of the Code, in addition to the underlying factual findings supporting the decision.

¶ 2                                    I. BACKGROUND

¶ 3       The State charged defendant by information with one count of home invasion and one count of domestic battery. Specifically, the counts alleged:

> "the defendant, not a peace officer acting in the line of duty, knowingly and without authority, entered the dwelling place of Vanessa Williams ***, knowing Vanessa Williams to be present within that dwelling place and intentionally caused injury to Vanessa Williams in that he struck Vanessa Williams in the face with his fist, in violation of 720 ILCS 5/19-6(a)(2)"

and

> "the defendant knowingly caused bodily harm to Vanessa Williams, a family or household member, by striking her in the face, in violation of 720 ILCS 5/12-3.2(a)(1)."

¶ 4       The State filed a verified petition to deny defendant pretrial release, citing both charges as detainable offenses. The petition also alleged that defendant's "pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." The trial court held a detention hearing immediately, at which the parties proceeded solely by way of proffer. No witnesses were called at the hearing. The hearing was recorded via audio recording equipment. There is no written transcript of the hearing.

¶ 5       At the hearing, the State proffered evidence of the above charges and defendant's criminal history. On December 29, 2023, officers were dispatched to

---

[1] Several provisions were subsequently amended again before the Act's original effective date. See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

the apartment of Vanessa Williams. Dispatch informed the officers that they could hear a woman yelling "stop" and that it sounded like the woman was being struck. Upon arrival, officers observed defendant on top of Williams in the doorway of her apartment. The defendant got up from Williams when officers arrived and was eventually taken into custody after struggling with one of the officers.

¶ 6 Williams informed the officers that defendant was intoxicated and upset upon arriving at her apartment. Defendant asked Williams to let him in the apartment, but Williams refused because she was in the process of seeking an order of protection against him. Defendant then broke the front window of the apartment. Williams attempted to barricade the front door of her apartment with a couch, but she was unable to prevent defendant from kicking the door open. Upon entering the apartment, defendant began hitting Williams in the face. Defendant also threw Williams into a mirror, causing it to break. Three minor children were in the apartment at the time, one of which belonged to both Williams and defendant. The children in the apartment witnessed the attack and ran to inform a neighbor, who called the police. The officers observed blood and bruises on Williams's head and face, as well as a bite mark on her left hand.

¶ 7 Defendant was previously convicted of armed robbery and sentenced to 14 years in the Department of Corrections. Defendant had two additional criminal cases pending against him, one for driving under the influence in 2021 and another for battery of Williams earlier in December 2023. At the time of both alleged assaults of Williams, defendant was on probation for aggravated battery of a peace officer. Defendant's public safety assessment report rated him as a 5 out of 6 on the "New Criminal Activity" scale and a 4 out of 6 on the "Failure to Appear" scale.

¶ 8 Defense counsel proffered evidence that defendant had recently been diagnosed with bipolar disorder and was planning to seek mental health treatment. Counsel suggested defendant be placed on electronic monitoring and ordered not to contact Williams. Counsel added that defendant may assert an affirmative defense of involuntary intoxication at trial because, prior to the charged behavior, defendant took a pain pill from a friend that inhibited his ability to "appreciate the nature of his conduct in this case."

¶ 9 The matter proceeded with argument, where the State asserted that the proffered evidence clearly established that (1) defendant battered Williams, (2) defendant

posed a real and present threat to Williams, and (3) no conditions could mitigate defendant's dangerousness or risk of flight. Defense counsel argued that the proffered evidence established that defendant would seek mental health treatment to address his recent bipolar diagnosis and therefore conditions could be imposed to mitigate defendant's dangerousness. Upon conclusion of argument, the McLean County circuit court found the presumption great that defendant committed the charged offenses and that he posed a threat to the community and Williams. The court also found that no condition or combination of conditions could mitigate defendant's dangerousness. The court therefore granted the State's petition to deny defendant pretrial release. Defendant then filed a timely notice of appeal in the appellate court from the order denying him pretrial release.

¶ 10        On appeal, defendant argued that the State had not established by clear and convincing evidence that no conditions of release—in particular, mental health treatment—could mitigate his dangerousness. Defendant urged the appellate court to conduct *de novo* review of the circuit court's contrary conclusion.

¶ 11        In declining to employ *de novo* review, the appellate court reasoned that, even where the evidence presented at a detention hearing consists solely of proffers or documentary evidence, a circuit court's decision still must be afforded deference because the circuit court "has the ability to observe something that the reviewing court never will: the defendant." 2024 IL App (4th) 240103, ¶ 25. More specifically, the court explained that the circuit court " 'can observe the defendant's demeanor and whether he or she appears compliant versus defiant or threatening,' an opportunity not afforded to the reviewing court." *Id.* (quoting *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 42 (Van Tine, J., specially concurring)).

¶ 12        While the appellate court found a circuit court's detention decision must be afforded deference, it rejected review of such a decision under the manifest weight of the evidence standard. The court explained:

"[N]either we nor the trial court can decide the 'weight' to give to the credibility of a declarant whose testimony was only described via proffer. Viewed properly, the trial court's role is not to evaluate such a declarant's credibility but to digest the proffered information, assess its strength in the light of contrary information, and make a *judgment* about how all of the information received

bears on the statutory requirements regarding pretrial release." (Emphasis in original.) *Id.* ¶ 19.

The appellate court then likened the circuit court's role in detention proceedings to that of deciding whether to enter a temporary restraining order or whether to grant a motion to disqualify a criminal defendant's chosen counsel. *Id.* ¶¶ 21-22. That is, those decisions require one ultimate judgment based on the presented facts, rather than requiring the court to make factual findings based on evidence. *Id.* ¶ 23.

¶ 13    In rejecting the *de novo* and manifest weight standards, the appellate court noted that the "Fourth District has consistently reviewed the trial court's findings regarding pretrial release for an abuse of discretion." *Id.* ¶ 13. The appellate court concluded that the abuse of discretion standard was a "better fit" when reviewing detention orders (*id.* ¶ 23) because the Act tasks circuit courts with "predict[ing]" the risks posed by a defendant's release after "examin[ing] and balanc[ing]" numerous factors (*id.* ¶ 20), which requires an "exercise[ ] of judgment" (*id.* ¶ 23). The court likened pretrial detention appeals to appeals from " '[o]rders setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof' under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023)," which were reviewed for an abuse of discretion. *Id.* ¶ 32. Here, the appellate court ultimately held that the trial court did not abuse its discretion in ordering defendant detained. *Id.* ¶ 44.

¶ 14    On April 19, 2024, defendant petitioned this court for leave to appeal. On May 1, 2024, defendant pled guilty to the home invasion charge, and the State moved to nol-pros the domestic battery charge. On June 11, 2024, we allowed defendant's petition for leave to appeal.

¶ 15                                    II. ANALYSIS

¶ 16    At the outset, we observe that defendant's appeal from the circuit court's order denying him pretrial release is moot because defendant has since pled guilty. While both defendant and the State acknowledge this reality, they each cite the public interest exception to the mootness doctrine in arguing that we should review the standard of review question. "The public interest exception to the mootness doctrine permits review of an otherwise moot question when the magnitude or

immediacy of the interests involved warrants action by the court." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 12. We have found the exception to apply when " '(1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur.' " *Id.* (quoting *In re Shelby R.*, 2013 IL 114994, ¶ 16).

¶ 17   We agree with the parties that all three criteria are met in the instant case. A debate has arisen in the appellate court regarding the appropriate standard of review to be applied to detention decisions under section 110-6.1 of the Code. Determining the proper standard of review will provide consensus throughout the Illinois judiciary. Additionally, this issue is likely to recur. We therefore apply the public interest exception to mootness and turn to the standard of review issue before us.

¶ 18   Each question raised in an appeal is subject to its own standard of review, which then governs the degree of deference to be applied on review. *Redmond v. Socha*, 216 Ill. 2d 622, 633 (2005). Here, the parties and the appellate court all disagree over which standard is to be applied when reviewing a circuit court's ultimate detention decision under section 110-6.1, in addition to the underlying factual findings supporting the decision. The appellate court reviewed the circuit court's order for an abuse of discretion. Both the State and defendant reject this analysis. Defendant argues for *de novo* review when the parties proceed solely by proffer and a hybrid or mixed standard of review (*de novo* and manifest weight of the evidence) when live testimony is presented. The State contends that a pure manifest weight of the evidence standard is appropriate, regardless of whether the circuit court did, or did not, hear live testimony.

¶ 19   Historically, the substance and nature of the question under review—whether it be one of fact, law, or discretion—*generally* determines which particular standard of review is to be applied to the question. Timothy J. Storm, *The Standard of Review Does Matter: Evidence of Judicial Self-Restraint in the Illinois Appellate Court*, 34 S. Ill. U.L.J. 73, 83-84 (2009). We therefore begin by broadly reviewing the three types of questions contemplated by the appellate court and the parties (fact, law, discretion), along with the standard of review historically associated with each respective question.

¶ 20    Questions requiring the circuit court to make a factual finding are *generally* reviewed under the manifest weight of the evidence standard. For example, we have applied the manifest weight of the evidence standard when reviewing a circuit court's factual finding that a petitioner established by a preponderance of the evidence that she had been abused under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/205(a), 214(a) (West 2004)). *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006). Likewise, we have found the following factual findings to be subject to review under the manifest weight of the evidence standard: (1) that the State met its burden of providing clear and convincing evidence of a parent's unfitness under section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1998)) (*In re C.N.*, 196 Ill. 2d 181, 208 (2001)); (2) that the State had established by a preponderance of the evidence that a child had been abused as defined by the Juvenile Court Act of 1987 (705 ILCS 405/2-18(1) (West 1992)) (*In re A.P.*, 179 Ill. 2d 184, 204 (1997)); and (3) what is in the best interest of a minor with respect to a parent's relocation petition (*In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32). Significantly, the circuit court, in each case, heard and observed extensive live testimony from multiple witnesses regarding the factual questions confronting it.

¶ 21    A factual finding " 'is against the manifest weight of the evidence where "the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." ' " *People v. Chatman*, 2024 IL 129133, ¶ 34 (quoting *People v. Peterson*, 2017 IL 120331, ¶ 39, quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). The reasoning behind the application of this deferential standard when reviewing a circuit court's factual findings is grounded in two principles: (1) having heard and observed the live witnesses' testimony, the circuit court is in a superior position to resolve alleged inconsistencies and conflicts in the witnesses' testimony, as well as to weigh the testimony and determine the credibility of the witnesses, and (2) the reviewing court never has the full benefit of hearing and observing the live witnesses' testimony. See *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 40. These two principles, taken together, represent the analytical underpinnings of the manifest weight of the evidence standard. It therefore follows that, where the circuit court has not heard live witness testimony and the evidence instead consisted solely of depositions, transcripts, or evidence otherwise documentary in nature, the circuit court's factual findings are not entitled to deference, as the reviewing court stands in the same position as the circuit court and may, therefore, review the record *de novo*. See *Cleeton v. SIU*

*Healthcare, Inc.*, 2023 IL 128651, ¶ 26; *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12; *People v. Radojcic*, 2013 IL 114197, ¶¶ 34-35; *Center Partners, Ltd. v. Growth Head GP, LLC.*, 2012 IL 113107, ¶¶ 65-69; *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009); *State Bank of Clinton v. Barnett*, 250 Ill. 312, 315 (1911); *Baker v. Rockabrand*, 118 Ill. 365, 370 (1886). Such a scenario represents an exception to the well-established principle that a circuit court's determination with respect to a question of fact is reviewed under the manifest weight of the evidence standard.

¶ 22 Unlike questions of fact, courts of review are primarily responsible for determining what the "law" is. "When determining what the 'law' is—that is, the pure legal doctrine—the power and role of the appellate court is at its fullest." Storm, *supra*, at 84. While a circuit court's factual findings often only affect the litigants involved in the respective dispute, resolution of legal questions by the appellate judiciary carries "broad and far-reaching implications." *People v. Washington*, 2023 IL 127952, ¶ 49. A reviewing court's decision on a legal issue establishes controlling precedent for future cases. *Id.* More significantly, in answering legal questions, the circuit court is in no better position than the reviewing court. Consequently, a circuit court's finding as to a question of law is reviewed *de novo*, granting no deference to the decision of the circuit court. For example, whether the circuit court has jurisdiction over a party or case is a legal question and, therefore, is reviewed *de novo*. *In re Detention of Hardin*, 238 Ill. 2d 33, 39 (2010). Likewise, a circuit court's legal determination granting a party's section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2022)) (*Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003)) or section 2-1005 motion for summary judgment (735 ILCS 5/2-1005 (West 2022)) (*Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007)) or, with respect to whether an agreement violates public policy (*In re Estate of Feinberg*, 235 Ill. 2d 256, 263 (2009)), all originate from legal questions that are therefore subject to *de novo* review.

¶ 23 The abuse of discretion standard is the most deferential standard and is reserved for reviewing questions of discretion. These unique questions often originate from the circuit court's responsibility to control its courtroom along with carrying out its obligation to protect the due process rights of the parties and the public. *People v. Allen*, 222 Ill. 2d 340, 348-49 (2006). Stated differently, " '[a]buse of discretion' is the most deferential standard of review—next to no review at all—and is therefore

*traditionally* reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." (Emphasis added.) *In re D.T.*, 212 Ill. 2d 347, 356 (2004). The inquiry, under this most deferential standard, is not whether the reviewing court would have made the same decision if it were acting as the circuit court. *Peterson*, 2017 IL 120331, ¶ 125. "Rather, the question is whether the trial court's decision is 'arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " *Id.* (quoting *People v. McDonald*, 2016 IL 118882, ¶ 32). Some examples of discretionary questions that call for such deference on review are whether to limit discovery (*People v. Williams*, 209 Ill. 2d 227, 234 (2004)), curtail cross-examination (*People v. Hall*, 195 Ill. 2d 1, 23 (2000)), allow or exclude evidence (*Swick v. Liautaud*, 169 Ill. 2d 504, 521 (1996)), accept or reject a negotiated plea (*People v. Henderson*, 211 Ill. 2d 90, 103 (2004)), exclude the public from the courtroom (*People v. Holveck*, 141 Ill. 2d 84, 102-03 (1990)), or declare a mistrial (*People v. Segoviano*, 189 Ill. 2d 228, 241 (2000)).

¶ 24      With the above historical framework in mind, we now turn to the precise question before us: What is the appropriate standard of review a reviewing court is to apply when examining a circuit court's ultimate detention decision under section 110-6.1, in addition to the underlying factual findings supporting the decision? Illinois law now presumes all defendants are eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022). However, upon a verified petition by the State, the circuit court shall hold a detention hearing and may deny a defendant pretrial release only if the defendant is charged with an offense eligible for detention (see *id.* § 110-6.1(a))[2] and the State proves at the detention hearing that (1) the proof is evident or the presumption great that the defendant committed the detention-eligible offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions of pretrial release set forth in section 110-10(b) can mitigate the defendant's dangerousness or the risk of the defendant's willful flight, as the Code may require, depending on the crime charged (see *id.*).

---

[2]Defendant does not dispute that the State filed a timely verified petition, nor does defendant contest that he was charged with a detention-eligible offense. This decision is limited to the particular facts and specific arguments before us.

*Id.* § 110-6.1(e).[3] The State bears the burden of proving all three requirements by clear and convincing evidence. *Id.* Section 110-6.1(g) sets forth factors the circuit court may consider when "determining whether the defendant poses a real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(g).

¶ 25　　Recently, we held that the State may present "evidence as to the statutory factors in section 110-5 to clearly and convincingly establish that no conditions can mitigate the safety threat posed by a defendant's release." *People v. Mikolaitis*, 2024 IL 130693, ¶ 21. We also explained that section 110-6.1(e) is devoid of any specific language outlining what specific type of evidence or argument the State must present in attempting to meet its burden under section 110-6.1(e). *Id.* ¶ 20. "Rather, the State must meet its burden and present sufficient evidence regarding the specific scenario presented by each case, such as the nature and circumstance of the offense, the defendant's criminal history, the defendant's risk assessment score, and other considerations known to the State at the time of the hearing ***." *Id.*

¶ 26　　The State "*may* present evidence at the hearing by way of proffer based upon reliable information." (Emphasis added.) *Id.* § 110-6.1(f)(2). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). If the circuit court, after conducting an individualized assessment of the State's evidence in conjunction with the relevant "dangerousness" factors listed in section 110-6.1(g) and the pretrial release conditions listed in section 110-10(b), determines that the State met its burden of proof as defined in section 110-6.1(e), the court may deny the defendant pretrial release. See *id.* § 110-6.1. Alternatively, if the State fails to carry its burden of proof, the presumption of pretrial release stands, and pretrial detention is unlawful. *Id.* §§ 110-2(a), 110-6.1(a). In such a scenario, the circuit court is to place the defendant on pretrial release subject to certain mandatory conditions (*id.* § 110-10(a)), while proceeding to determine whether any additional conditions of pretrial release are necessary to ensure the defendant's appearance and the safety of the community (*id.* § 110-10(b)). *Id.* § 110-5(c). Indeed, section

---

[3]We note that subsection (e)(4) states that certain drug related felonies included within subsection (a)(1) must meet the dangerousness standard *and* must also prove that the defendant poses a serious risk to not appear in court as required.

110-10(a) provides a defined list of pretrial release conditions that "shall" be imposed if the defendant is placed on pretrial release (*id.* § 110-10(a)). *Id.* § 110-5(c). Section 110-5(c) allows the circuit court to, when "necessary" (*id.* § 110-10(b)), impose additional conditions of pretrial release beyond the mandatory conditions. *Id.* § 110-5(c). Either party may appeal any decision to detain, or not to detain, under section 110-6.1. *Id.* § 110-6.1(j), (k).

¶ 27 In interpreting the above provisions, the appellate court held that "a trial court's decision and findings on issues of pretrial detention are appropriately reviewed under the abuse of discretion standard."[4] 2024 IL App (4th) 240103, ¶ 35. We, along with the parties here on appeal, disagree with the appellate court's conclusion. To detain a defendant, the circuit court must find that the State satisfied its burden of proof—establishing the three statutory requirements set forth in section 110-6.1(e) by clear and convincing evidence. All three requirements contemplate unique factual questions that the circuit court must resolve based on an individualized assessment of the evidence presented at the detention hearing and a careful review of the statutory "dangerousness" factors and pretrial release conditions listed in sections 110-6.1(g) and 110-10(b).

¶ 28 The appellate court summarized the circuit court's duty as follows: "[D]igest the proffered information, assess its strength in the light of contrary information, and make a *judgment* about how all of the information received bears on the statutory requirements regarding pretrial release." (Emphasis in original.) *Id.* ¶ 19. The appellate court then proceeded to note that " '[r]eview for abuse of discretion is proper when the trial court *** must, for lack of a better phrase, make a judgment call.' " *Id.* ¶ 20 (quoting *People v. Chambers*, 2016 IL 117911, ¶ 75). The appellate court's conclusion, which relies upon the fact that the circuit court must render a "judgment" on the evidence and statutory requirements, is misplaced.[5] Every

---

[4]The standard of review question addressed by the appellate court is one of law, and therefore our review of the appellate court's selection of the abuse of discretion standard is *de novo*. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 52.

[5]The appellate court's decision also relies upon a small number of decisions issued prior to the enactment of the Act. See *People v. Simmons*, 2019 IL App (1st) 191253; *People v. Edwards*, 105 Ill. App. 3d 822 (1982); *People v. Kelly*, 24 Ill. App. 3d 1018 (1975); *People ex rel. Smith v. Blaylock*, 357 Ill. 23 (1934). These decisions reviewed a *previous* version of the Code governing the setting of conditions of pretrial release,

decision made by a circuit court, regardless of whether it is factual, legal, or discretionary, requires some degree of "judgment." More importantly, "there is nothing discretionary about making a finding as to whether the State has met its standard of proof of a particular fact." *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 89 (Ellis, J., specially concurring). "Whether the State has supplied the requisite proof is a binary question; either the State has met its burden of proof or it has not." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 38 (Lampkin, J., specially concurring). The answer to this binary question dictates whether a defendant is to be detained or placed on pretrial release. Moreover, the mere fact that the circuit court may consider the relevant statutory factors and conditions provided in sections 110-6.1(g) and 110-10(b) while answering this binary question does not act to transform the question from one of fact to one of discretion. Our decision in *D.T.*, 212 Ill. 2d at 355, provides a helpful illustration of the nondiscretionary nature of this assessment.

¶ 29      In *D.T.*, the State and the guardian *ad litem* (GAL), in addressing the appropriate burden of proof at a best-interest hearing, argued that the answer to the factual question of what is in the best interests of a minor rests with the " 'sound discretion' " of the circuit court. *Id.* at 353. In support of their position, the State and the GAL noted that the circuit court, in making a best-interests determination, is charged with the daunting task of weighing and balancing the numerous statutory factors, all in conjunction with the child's age and developmental needs. *Id.* at 354. We rejected this argument, stating:

      "Although we agree that determination of a child's best interests presents a difficult and delicate task, requiring a nuanced analysis of the statutory factors, we disagree that the difficulty of the task facing the trial court justifies relieving the petitioner—here, the State—of its burden to demonstrate its entitlement to the relief it seeks. We also disagree with the suggestion that 'sound discretion' is some sort of 'nontraditional' standard of proof. 'Sound discretion' is simply not a standard of proof—traditional, nontraditional, or otherwise. 'Standards of

_____

including monetary bail. These decisions are of little help in determining the appropriate standard of review to apply to the circuit court's decisions on the binary question—did the State satisfy its burden of proof under section 110-6.1(e). Simply put, the General Assembly's enactment of the Act "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe*, 2023 IL 129248, ¶ 4.

- 12 -

proof are concerned with the quantum and quality of proof that must be presented in order to prevail on an issue.' [Citation.] As the United States Supreme Court explained:

'The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." ' [Citation.]" *Id.* at 354-55.

¶ 30        While sections 110-6.1(g) and 110-10(b) of the Code set forth factors and conditions the circuit court may consider when determining whether the State has clearly and convincingly established the defendant's dangerousness, which no condition or combination of conditions of pretrial release can mitigate (725 ILCS 110-6.1(g), 110-10(b) (West 2022)), we made clear in *D.T.* that factfinding with respect to a party's burden of proof, even when conducted in conjunction with the balancing of statutory factors, is not a discretionary act. We also explained that such an endeavor, within the context of a best-interests hearing, "is plainly not the type of ruling to which the highly deferential abuse of discretion review traditionally applies." *D.T.*, 212 Ill. 2d at 357. Likewise, the circuit court's factual determination as to whether the State established by clear and convincing evidence that (1) the defendant likely committed the detention-eligible offense, (2) the defendant poses a threat to the safety of the community or victim, and (3) no condition or combination of conditions can mitigate defendant's dangerousness or risk of flight does not fall within the realm of a discretionary question, nor is it analogous to any of the discretionary examples discussed above. Again, the abuse of discretion standard is "traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *Id.* at 356. The appellate court erred in applying this standard.

¶ 31        In disagreeing with the above conclusion, the special concurrence notes that the following decisions of the circuit court are all reviewed for an abuse of direction: (1) transfer of a juvenile delinquency adjudication to adult court, (2) sentencing of a convicted defendant, and (3) entry of a temporary restraining order. *Infra* ¶¶ 78-80. Each of these decisions, however, is readily distinguishable from a decision under section 110-6.1. With respect to decisions regarding juvenile transfers, the

special concurrence fails to identify a statutorily mandated burden of proof the State must meet before the circuit court can transfer the juvenile to adult court. Instead, the special concurrence cites our holding in *People v. Morgan*, 197 Ill. 2d 404, 422 (2001), that "[t]he decision to permit prosecution of a juvenile under the criminal law is a matter of judicial discretion." Unlike section 110-6.1, however, the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 1994)) expressly allows for discretionary transfers. See *Morgan,* 197 Ill. 2d at 422-23 (interpreting the pre-1999 version). Similarly, when the appellate court reviews the propriety of a sentence under the abuse of discretion standard it is not reviewing whether the State proved an element by "clear and convincing evidence." See 730 ILCS 5/5-5-3.1 (West 2022) (mitigation factors "shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment"); *id.* § 5-5-3.2(a) (factors in aggravation "shall be accorded weight in favor of imposing a term of imprisonment").

¶ 32        Like the appellate court, the special concurrence also compares the circuit court's ultimate detention decision under 110-6.1 to decisions entering a temporary restraining order (TRO). *Infra* ¶ 80. The appellate court compared the use of affidavits or verified complaints for a TRO to proffers used in the pretrial detention context and noted that the court's determinations "appear to be fundamentally factual." 2024 IL App (4th) 240103, ¶ 21. The appellate court and the special concurrence both overlook the fact that there is no statutorily mandated burden of proof in TRO proceedings. See 735 ILCS 5/11-101 (West 2022).

> "The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather, he only needs to show that he raises a 'fair question' about the existence of his right and that the court should preserve the status quo until the cause can be decided on the merits." *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 542 (1983) (quoting *Boner v. Drazek*, 55 Ill. 2d 279, 285-86 (1973)).

Simply put, the special concurrence and the appellate court have failed to identify any viable authority or precedent supporting their belief that the circuit court's ultimate detention decision under section 110-6.1 is one of discretion.

¶ 33        We now turn to the parties' specific arguments before this court. Defendant's argument can be broken down into three assertions. First, defendant believes that the ultimate question regarding detention is one of law and should therefore

"always [be reviewed] *de novo*" irrespective of whether live testimony was presented at the detention hearing. Second, in cases where live testimony is presented at the detention hearing, defendant contends that the reviewing court should review any factual findings made by the circuit court under the manifest weight of the evidence standard but that the ultimate detention decision under section 110-6.1 remains subject to *de novo* review. And third, in scenarios such as the instant case, where no live testimony is presented at the detention hearing and the parties proceed solely by proffer, defendant asserts the reviewing court's standard of review on appeal is *de novo*. In response, the State asserts that the manifest weight of the evidence standard is appropriate for both the circuit court's factual findings and its ultimate decision regarding detention or pretrial release. The State believes this standard applies regardless of whether the circuit court heard live testimony or, alternatively, the parties proceeded solely by proffer.

¶ 34     The special concurrence completely disregards the parties' specific arguments before this court and instead believes the standard of review question before us is limited to determining the appropriate standard to be applied when reviewing a circuit court's finding with respect to the individual statutory requirement of whether the State established by clear and convincing evidence that no condition or combination of conditions of release would mitigate the real and present threat defendant posed to the community. *Infra* ¶ 62; see 725 ILCS 5/110-6.1(e)(3) (West 2022). The special concurrence further limits the question to factual scenarios where no live witness testimony is presented and the parties instead proceed solely by proffer. *Infra* ¶ 61. This action not only inappropriately disregards the parties' specific arguments, but it also ignores the fact that we, including the special concurrence, have consciously chosen to apply the public interest exception in order to address the parties' arguments, thereby settling the wide-ranging conflict in the appellate court regarding the appropriate standard for reviewing a circuit court's ultimate detention decision under section 110-6.1 in addition to the underlying factual findings supporting the decision. Answering the special concurrence's narrowly reframed question would not end the ongoing debate in the appellate court, and thus application of the public interest exception under such circumstances would be plainly inappropriate.

¶ 35     Turning back to the parties' specific arguments, defendant cites "the gravity of the detention decision" in support of his first assertion that the ultimate question

regarding detention should "always [be reviewed] *de novo*" irrespective of whether live testimony was presented at the detention hearing. Defendant also notes the "importance and fundamental nature of an individual's strong interest in liberty" along with the fact that "imprisonment for however short a time will seldom be viewed by the accused as a trivial or petty matter and may well result in quite serious repercussions affecting his career and his reputation." While we acknowledge the interests cited by defendant with respect to the effects pretrial detention may have upon a detained individual, we similarly note the government's competing interests in ensuring the safety of the public and securing a defendant's appearance in court. The General Assembly, via the Act, sought to balance these competing interests. It is not this court's place to select which interest is more compelling and therefore favored via application of a particular standard of review on appeal. Instead, we look to our precedent and historical practice for guidance in determining whether we "should hold that review of the [ultimate] detention decision is always *de novo*."

¶ 36       As discussed above, determinations regarding the appropriate standard of review on appeal historically turn on the nature and substance of the question under review (fact, law, or discretion), not the importance of the question itself. After careful consideration, we reject defendant's first assertion that the circuit court's ultimate decision whether to detain a defendant constitutes a question of law. While defendant generically contends "a crucial liberty interest is at stake" during pretrial detention proceedings, he fails to cogently explain what legal issues remain after the circuit court assesses whether the State presented clear and convincing evidence that defendant likely committed the detention eligible-offense and whether the defendant poses a flight risk or threat to the safety of others that no conditions of release can mitigate. This individualized assessment is not one of discretion, nor is it one of law. Instead, the individualized assessment of evidence in conjunction with any relevant statutory factors and conditions is a factual exercise. Upon concluding this individualized assessment, there is no additional legal analysis the circuit court is required to engage in prior to rendering its ultimate decision under section 110-6.1—whether the defendant should be detained or placed on pretrial release. Indeed, the circuit court's individualized assessment of the evidence with respect to the State's burden of proof requirements as set forth in section 110-6.1(e), and the court's contemporaneous consideration of the statutory factors and conditions

set forth in sections 110-6.1(g) and 110-10(b) acts to substantively answer the ultimate detention question under section 110-6.1.

¶ 37       Although by no means a perfect analogy, we find the circuit court's ultimate decision regarding detention echoes the circuit court's ultimate decision of whether to terminate a parent's constitutional right in "the care, custody, and control of his or her children." *In re M.H.*, 196 Ill. 2d 356, 362-63 (2001). Because the United States and Illinois Constitutions protect this fundamental right, the "procedures involved in terminating parental rights must meet the requisites of the due process clause." *Id.* Much like a circuit court's ultimate detention decision under section 110-6.1 is controlled by the court's individualized findings with respect to the three factual questions set forth in section 110-6.1(e), the circuit court's ultimate termination decision is governed by the court's individualized findings with respect to the following two factual questions: (1) whether the State established the parent's unfitness by clear and convincing evidence (*id.* at 365; 705 ILCS 405/2-29 (West 2022); 750 ILCS 50/1(D) (West 2022)), and (2) if so, whether the State established by a preponderance of the evidence that termination of the parent's fundamental right is in the minor's best interest (*D.T.*, 212 Ill. 2d at 366; 705 ILCS 405/2-29(2) (West 2000)). Upon answering these two factual questions, there is no additional legal analysis the circuit court is required to engage in prior to terminating a parent's fundamental right. Just as the Code provides that a circuit court "may deny a defendant pretrial release" if the requirements contained within section 110-6.1 (725 ILCS 5/110-6.1(a)) (West 2022)) are met, the circuit court "may terminate parental rights" after finding the parent unfit and that termination is in the best interest of the minor (705 ILCS 405/2-29(2) (West 2022)).

¶ 38       Because cases under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) must be decided on the basis of their unique facts and also because the circuit court is in the best position to assess the credibility of live witnesses and weigh the evidence presented in conjunction with the relevant statutory factors, we have held that a reviewing court will not disturb a circuit court's unfitness or best interest finding unless they are found to be against the manifest weight of the evidence. See *C.N.*, 196 Ill. 2d at 208 (holding "[i]n order to reverse a trial court's finding that there was clear and convincing evidence of parental unfitness, the reviewing court must conclude that the trial court's finding was against the manifest weight of the evidence"); *In re Austin W.*, 214 Ill. 2d 31, 51-52 (2005) (holding

"[t]he best-interests determination is then reviewed under the 'manifest weight of the evidence' standard"), *abrogated on other grounds by In re M.M.*, 2016 IL 119932. Similarly, each statutory burden of proof requirement set forth in section 110-6.1(e) presents a unique factual question that the circuit court must resolve based on an individualized assessment of the evidence, the credibility of the live witnesses, and a careful analysis of the relevant statutory factors and conditions provided in sections 110-6.1(g) and 110-10(b). As discussed above, when confronted with such factual questions, the circuit court is in a superior position to resolve alleged inconsistencies and conflicts in the live witnesses' testimony, as well as to weigh the testimony and determine the credibility of the witnesses in conjunction with the relevant statutory factors and conditions. Moreover, the reviewing court never has the full benefit of hearing and observing the witnesses' testimony. Accordingly, we adhere to our historical approach of applying the manifest weight of the evidence standard to such a scenario. For these reasons, we reject defendant's second assertion that, where live testimony is presented at a detention hearing, the reviewing court should review the circuit court's factual findings under the manifest weight of the evidence standard but the ultimate detention question under section 110-6.1 remains subject to *de novo* review. Instead, we hold that, when live witness testimony is presented at a pretrial detention hearing, a circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence.

¶ 39    In rejecting this conclusion, the special concurrence contends that a circuit court's factual determination as to the individual burden of proof requirement contained within subsection (e)(3) of section 110-6.1—whether any condition or combination of conditions of pretrial release can mitigate the defendant's dangerousness or risk of flight—is "not mandated by any specific objective factual finding" or based on "a set of legally mandated factors" or "a specifically defined standard." *Infra* ¶ 75. The special concurrence concludes that such a determination does not embody a "choice between two finite alternatives" (*infra* ¶ 75) but, instead, represents a choice of "reasoned judgment" or discretion (*infra* ¶ 81). As discussed above, the special concurrence is incorrect. The "two finite alternatives" as to the question of whether the State has met its burden of proof on each of the three statutory requirements contained in section 110-6.1(e) are (a) the State met its

burden of proof or (b) the State did not meet its burden of proof. The binary choice is a factual determination. The "legally mandated factors" and "specifically defined standard" governing this factual determination are clearly defined. *Infra* ¶ 75. Indeed, the General Assembly expressly defines the quantum and quality of proof that the State must present in order for the State to satisfy its burden and prevail on its verified petition to detain—clear and convincing evidence, establishing all three statutory requirements. See 725 ILCS 5/110-6.1(e) (West 2022); see also *D.T.*, 212 Ill. 2d at 354-55 (statutory requirements for determining the best interests of a child). The General Assembly also expressly sets forth several statutory factors and conditions the circuit court may consider when attempting to determine whether the State has or has not satisfied its burden of proof with respect to the three statutory requirements contained in section 110-6.1(e). See 725 ILCS 5/110-6.1(g), 110-10(b) (West 2022); see also *D.T.*, 212 Ill. 2d at 354-55.

¶ 40    The special concurrence ignores this reality and instead conflates the circuit court's individual factual finding under subsection (e)(3) of section 110-6.1 with the circuit court's decision under section 110-5—whether to impose additional conditions of pretrial release beyond the mandatory conditions and, if so, which ones. *Infra* ¶ 73. We find that the circuit court's ultimate detention decision under section 110-6.1 is distinct and unique from the circuit court's decision to impose, or not impose, certain conditions of pretrial release under section 110-5, as the necessity of the latter decision only arises after finding that the State failed to meet its burden of proof under section 110-6.1(e). The special concurrence, however, puts the cart before the horse. Relying upon section 110-5, the special concurrence believes a circuit court's decision to impose, or not impose, certain conditions of pretrial release somehow transforms the circuit court's decision with respect to the factual question contained within subsection (e)(3) of section 110-6.1 into one of discretion. *Infra* ¶¶ 72-73, 81-82, 81 n.8. Initially, we note that section 110-6.1(e) does not contain any reference to section 110-5. See 725 ILCS 5/110-5; 6.1(e) (West 2022). In fact, section 110-5 is only mentioned once in the entirety of section 110-6.1, and it is found in section 110-6.1(g), which sets forth the factors the circuit court may consider in "making a determination of [the defendant's] dangerousness." *Id.* § 110-6.1(g)(9). More importantly, while section 110-5 does involve conditions of pretrial release, the special concurrence ignores the very title of the section and misinterprets the section's substantive scope. Section 110-5 is titled "Determining the *amount* of bail and conditions of release." (Emphasis

added.) *Id.* § 110-5. Consistent with its title, the section's provisions are aimed almost entirely toward assisting the circuit court in determining which particular conditions of pretrial release should, or should not, be imposed upon a defendant who is being placed on pretrial release. For example, section 110-5(c) states:

> "The court shall impose any conditions that are mandatory under subsection (a) of Section 110-10. The court may impose any conditions that are permissible under subsection (b) of Section 110-10. The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." *Id.* § 110-5(c).

See *id.* § 110-5(a) (setting forth a list of considerations that shall inform the circuit court's selection of conditions upon granting pretrial release); *id.* § 110-5(b) (permitting the circuit court to use a validated risk assessment tool to aid its determination of appropriate conditions of pretrial release); *id.* § 110-5(d) (permitting the circuit to impose electronic surveillance as a condition of pretrial release upon a defendant charged with a violation of a protective order); *id.* § 110-5(e) (requiring the circuit court to hold a hearing where a defendant remains in pretrial detention 48 hours after having been ordered released with pretrial conditions in order to determine whether a defendant's continued detention was due to unsatisfied pretrial release conditions); *id.* § 110-5(f-5) (directing the circuit court at each subsequent appearance of the defendant to find that the current pretrial conditions imposed remain necessary); *id.* § 110-5(g) (placing restrictions on the circuit court as to when the pretrial release conditions of electronic monitoring, GPS monitoring, or home confinement can be imposed); *id.* § 110-5(i) (requiring the circuit court to reevaluate orders imposing electronic monitoring every 60 days).

¶ 41    Section 110-5 simply cannot be relied upon to transform the circuit court's ultimate detention decision under section 110-6.1, which is factual and based upon the evidence presented at the detention hearing, into a decision of "reasoned judgment" or discretion (*infra* ¶ 81). It logically follows that, in cases where the State has filed a verified detention petition, the circuit court is not called upon to "[d]etermin[e] the amount of bail and conditions of release" under section 110-5 (725 ILCS 5/110-5 (West 2022)) until it first determines that the State failed to

carry its evidentiary burden of proof with respect to one or more of the three statutory requirements provided in section 110-6.1(e) (*id.* § 110-6.1(e)). For example, assuming the defendant has been charged with an offense eligible for detention, the court first must make a factual determination as to whether the State presented clear and convincing proof that (1) the defendant likely committed the detention-eligible offense, (2) the defendant is dangerous, and (3) no conditions could mitigate defendant's dangerousness or risk of flight.[6] *Id.* If the answer to this binary factual question is "yes," the court may detain the defendant, and the pretrial hearing concludes. In such a scenario, the court is not called upon to "[d]etermin[e] the amount of bail and conditions of release." *Id.* § 110-5. If, however, the answer to this binary factual question is "no" due to the State's failure to satisfy its burden of proof with respect to one or more of the three statutory requirements, the presumption of pretrial release stands, and the court is to place the defendant on pretrial release subject to certain mandatory conditions (*id.* § 110-10(a)), while analyzing section 110-5 to determine whether any additional conditions of pretrial release are necessary (*id.* § 110-10(b)). *Id.* § 110-5.[7]

¶ 42    We note several other sections of the Code support the conclusion that the circuit court's ultimate detention decision under section 110-6.1 is distinct and

---

[6]We reiterate our recent holding in *Mikolaitis* that the State may present "evidence as to the statutory factors in section 110-5 to clearly and convincingly establish that no conditions can mitigate the safety threat posed by a defendant's release," *i.e.* meeting its burden of proof with respect to section 110-6.1(e)(3). *Mikolaitis*, 2024 IL 130693, ¶ 21. While the Code identifies the State's burden of proof under 110-6.1(e), it does not dictate what evidence or argument the State must present in attempting to meet its burden. *Id.* ¶ 20. In other words, the issue in *Mikolaitis* involved examining the scope of evidence the State may present to satisfy its burden of proof under subsection (e)(3) of section 110-6.1. The instant case does not present a question of evidence. Instead, our decision today is limited to examining the substance and nature of the burden of proof question under section 110-6.1(e) and the circuit court's accompanying detention decision under section 110-6.1 (law, fact, or discretion). Such a determination is necessary, as it is our historical practice that the substance and nature of the question under review—whether it be one of fact, law, or discretion—determines which particular standard of review is to be applied on appeal.

[7]Here, the circuit court held that the State met its burden of proof under section 110-6.1(e). Thus, defendant was detained under section 110-6.1, and the circuit court was not required to "[d]etermin[e] the amount of bail and conditions of release" under section 110-5. 725 ILCS 5/110-5 (West 2022). Accordingly, the question regarding the applicable standard of review with respect to this hypothetical determination under section 110-5 is not before us at this time.

unique from the circuit court's decision to impose, or not impose, certain conditions of pretrial release under section 110-5. Significantly, where the State does not file a verified petition to detain the defendant—a decision that avoids triggering section 110-6.1—the circuit court is still required to "admit the defendant to pretrial release in accordance with the provisions of Article 110." *Id.* § 109-1(b)(4). We also note that the State is expressly required "to prove by clear and convincing evidence that any condition of release is necessary." *Id.* § 110-2(b). In other words, the imposition of a condition or conditions of pretrial release is not merely a formality subsumed within the factual inquiry associated with section 110-6.1(e). This reality is further illustrated by the fact that "[t]he State and defendants may appeal court orders imposing conditions of pretrial release." *Id.* § 110-5(k).

¶ 43        It is for these reasons that we reject the special concurrence's contention that section 110-5 transforms the circuit court's determination with respect to subsection (e)(3) of section 110-6.1 from one of fact to one of discretion. We adhere to our historical practice that a circuit court's determination with respect to a factual question will be reviewed under the manifest weight of the evidence standard. In other words, when live witness testimony is presented at a pretrial detention hearing, a circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence.

¶ 44        Although we have identified the proper standard of review to be applied to detention decisions deriving from hearings where live witness testimony is presented, our inquiry does not end here. Defendant's final assertion directs our attention to detention hearings, such as the one in the instant case, where no live witness testimony is presented and the parties instead proceed solely by proffer. In such a scenario, defendant argues that "a deferential standard is not warranted," as "the reviewing court is in the same position as the circuit court below." Defendant continues: "Where the parties proceed solely by proffer or similar evidence, the circuit court does not 'gauge the demeanor and credibility of witnesses,' " and therefore, review of the circuit court's factual findings should be *de novo*. See *Addison Insurance Co.*, 232 Ill. 2d at 453. Our precedent supports defendant's final assertion.

¶ 45    Again, the principle that a circuit court's factual findings are entitled to deference on appeal is well established. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). Since 1886, however, we have consistently upheld an exception to this principle where the circuit court did not hear live witness testimony and the evidence before the court instead consisted solely of depositions, transcripts, or evidence otherwise documentary in nature. *Cleeton*, 2023 IL 128651, ¶ 26; *Aspen American*, 2017 IL 121281, ¶ 12; *Radojcic*, 2013 IL 114197, ¶¶ 34-35; *Center Partners*, 2012 IL 113107, ¶ 65; *Addison Insurance Co.*, 232 Ill. 2d at 453; *Barnett*, 250 Ill. at 315; *Baker*, 118 Ill. at 370. In such a scenario, a reviewing court is not bound by the circuit court's factual findings and may review the record *de novo*. *Cleeton*, 2023 IL 128651, ¶ 26; *Aspen American*, 2017 IL 121281, ¶ 12; *Radojcic*, 2013 IL 114197, ¶¶ 34-35; *Center Partners*, 2012 IL 113107, ¶ 65; *Addison Insurance Co.*, 232 Ill. 2d at 453; *Barnett*, 250 Ill. at 315; *Baker*, 118 Ill. at 370. *Addison Insurance Co.* is the seminal case upholding this exception.

¶ 46    In *Addison Insurance Co.*, we reviewed a declaratory judgment involving the estates of two young boys who were injured as a result of an insured policyholder's negligent maintenance of its property. *Addison Insurance Co.*, 232 Ill. 2d at 448. After leaving their homes to go fishing together, the two boys became trapped in an excavation pit on the insured's property and died. *Id.* at 448-49. The insured's liability was not at issue. *Id.* at 448. Rather, the circuit court was asked to factually determine whether the injuries to the boys constituted a single occurrence or multiple occurrences under the terms of the insured's insurance policy. *Id.*

¶ 47    Both parties presented witnesses but did so only by deposition. Thus, the circuit court never heard live testimony. *Id.* at 453. The doctor who performed the autopsy on both boys concluded that the immediate cause of one boy's death was hypothermia. *Id.* at 449. However, the immediate cause of the other boy's death was drowning secondary to hypothermia. *Id.* The circuit court found that the boys' injuries were the result of two occurrences. *Id.* at 450. The circuit court acknowledged that the evidence can be viewed " 'in ways that tend to support both sides [*sic*] positions.' " *Id.* However, the circuit court found the evidence sufficient to show that the causes of death were different. *Id.* at 450-51. The appellate court reversed, concluding that "the boys' deaths were 'so closely linked in time and space as to be considered by a reasonable person as one "occurrence." ' " *Id.* at 451 (quoting *Addison Insurance Co. v. Fay*, 376 Ill. App. 3d 85, 91 (2007)).

¶ 48 On appeal to this court, a dispute arose as to the proper standard of review. *Id.* The insurance company contended that the factual findings of the circuit court should be reviewed *de novo* in determining the number of occurrences. *Id.* In contrast, the boys' estates argued that the appellate court improperly disregarded the circuit court's factual findings in concluding that the boys came to the pit together and were trapped moments apart. *Id.* The estates instead argued that we should apply the manifest weight standard in reviewing the circuit court's factual findings. *Id.* In agreeing with the insurance company, we held:

> "In this case, the trial court heard no live testimony. Both parties acknowledged at oral argument that all testimony was submitted by admitting discovery depositions into evidence. The trial court was not required to gauge the demeanor and credibility of witnesses. [Citation.] Instead, the trial court made factual findings based upon the exact record presented to both the appellate court and to this court. Without having heard live testimony, the trial court was in no superior position than any reviewing court to make findings, and so a more deferential standard of review is not warranted. Thus, although this court has not done so recently, we reiterate that where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*. [Citations.] In the case at bar, this court will review the trial court's findings *de novo*, and to the extent that the appellate court reviewed the record *de novo*, we hold that the appellate court did not err in doing so." *Id.* at 453.

¶ 49 Significantly, the State conceded at oral argument that there has not been one case from this court, or the appellate court, that has reviewed a circuit court's factual finding under the manifest weight of the evidence standard where no live witness testimony was presented in the circuit court.

> "JUSTICE HOLDER WHITE: Counsel, can you point us to any cases that utilize the manifest weight of the evidence standard where only documentary evidence is presented?

> THE STATE: No, your Honor. I'm not aware of cases that do that in Illinois. We concede that under *Addison* [*Insurance Co.*], and there is a long line of this

- 24 -

court's precedent, which has held that where only documentary evidence is presented, the appellate court reviews factual findings *de novo*."

¶ 50    While the State acknowledges that this case would represent the first instance wherein this court affords a level of deference to factual findings drawn not from live witness testimony but solely from documentary-type evidence, the State insists that the circuit court still retains a "factfinding advantage" because it can "observe" the defendant. The appellate court agreed, finding the circuit court " 'can observe the defendant's demeanor and whether he or she appears compliant versus defiant or threatening,' an opportunity not afforded to the reviewing court." 2024 IL App (4th) 240103, ¶ 25 (quoting *Pitts*, 2024 IL App (1st) 232336, ¶ 42 (Van Tine, J., specially concurring)). We disagree with both the State and the appellate court.

¶ 51    A defendant, exercising his or her constitutional right to remain *silent*, offers no evidentiary value with respect to the statutory requirements and factors governing detention or pretrial release. The State and appellate court's contrary position prompts the question: How does one weigh a *silent* defendant's "demeanor"? While we acknowledge our precedent that the circuit court is in a superior position to " 'observe the *witnesses'* demeanor' " (emphasis added) (*Radojcic*, 2013 IL 114197, ¶ 34 (quoting *Richardson*, 234 Ill. 2d at 251)), a *silent* defendant is not a witness and therefore not offering evidence on the factual question at hand. To be sure, a circuit court's factual findings are required to be grounded in fact. The weighing of one's demeanor, however, goes to the question of credibility. See *People v. Cruz*, 162 Ill. 2d 314, 379 (1994); *People v. Boclair*, 129 Ill. 2d 458, 478 (1989). In other words, evaluation of one's demeanor goes to the questions of whether the live witness's testimony should be considered as true and how much weight the trier of fact should give the witness's testimony when attempting to answer the factual question before it. A *silent* defendant offers no evidentiary facts for the circuit court to consider, and the *silent* defendant's credibility is therefore not at issue. Moreover, "[u]nder Illinois's evidentiary law, '[e]vidence of the defendant's postarrest silence is considered neither material nor relevant to proving or disproving the charged offense.' " *People v. Pinkett*, 2023 IL 127223, ¶ 31 (quoting *People v. Sanchez*, 392 Ill. App. 3d 1084, 1096 (2009)). Today, we adopt this principle within the pretrial detention context. In doing so, we again reaffirm more than a century of this court's precedent providing an exception to the well-established principle that a circuit court's factual findings are entitled to

deference—"where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*." *Addison Insurance Co.*, 232 Ill. 2d at 453. Accordingly, when parties to a pretrial detention hearing proceed solely by proffer, the reviewing court stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature.

¶ 52    The special concurrence rejects this conclusion because it believes that the circuit court is better suited to predict the future than the reviewing court. Specifically, the special concurrence contends that the circuit court will "develop expertise in making these predictive risk assessments" regarding dangerousness or flight. *Infra* ¶ 73. Not surprisingly, the special concurrence fails to cite any actuarial data, precedent, or authority supporting this conclusory claim. We also note that neither defendant nor the State has raised this speculative belief in this court. Regardless, the fact remains that this court has long reviewed evidence similar to proffers *de novo* where we are in the same position as the circuit court, and we have done so in a wide variety of contexts. See *Cleeton*, 2023 IL 128651, ¶ 26; *Aspen American*, 2017 IL 121281, ¶ 12; *Radojcic*, 2013 IL 114197, ¶¶ 34-35; *Center Partners*, 2012 IL 113107, ¶¶ 65-69; *Addison Insurance Co.*, 232 Ill. 2d 446, 453 (2009); *Barnett*, 250 Ill. at 315; *Baker*, 118 Ill. at 370. The special concurrence simply cannot escape the historical reality that deference is afforded to a circuit court's factual findings because, (1) having heard and observed the live witnesses' testimony, the circuit court is in a superior position to resolve alleged inconsistencies and conflicts in the witnesses' testimony, as well as to weigh the testimony and determine the credibility of the witnesses, and (2) the reviewing court never has the full benefit of hearing and observing the live witnesses' testimony. Neither scenario exists here. The special concurrence's decision to afford deference under these facts flies in the face of over a century of this court's precedent.

¶ 53                                        CONCLUSION

¶ 54    We hold that (1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in

addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature.

¶ 55    Upon applying *de novo* review, we affirm the circuit court's judgment denying defendant pretrial release.

¶ 56    Affirmed.

¶ 57    JUSTICE OVERSTREET, specially concurring:

¶ 58    While I agree with the majority that review in this case is appropriate under the public interest exception to the mootness doctrine and the circuit court's decision to detain defendant was not reversible error, I disagree with the majority's determination that the appropriate standard for reviewing that decision is *de novo*, thus giving no deference to the circuit court's findings. Moreover, I disagree with the State's assertion that the manifest weight of the evidence standard of review is appropriate. Rather, for the reasons that follow, I agree with the appellate court and would employ the abuse of discretion standard of review in this case.

¶ 59    First, I disagree with the majority's statement of the issue under consideration and, relatedly, the breadth of its holding. According to the majority, this case calls upon us to determine "the appropriate standard of review a reviewing court is to apply when reviewing a circuit court's ultimate detention decision under section 110-6.1 of the Code, in addition to the underlying factual findings supporting the decision." *Supra* ¶ 1. However, "a standard of review applies to an individual issue, not to an entire appeal," and "[e]ach question raised in an appeal is subject to its own standard of review." *Redmond v. Socha*, 216 Ill. 2d 622, 633 (2005). Here, the majority's holding is problematic because it pronounces the applicable standard of review for the "circuit court's ultimate detention decision under section 110-6.1" of the Code without considering the claim of error that has been raised with respect to the requirements of that section. See *supra* ¶ 54.

¶ 60    For example, only defendants charged with specific crimes are eligible for pretrial detention. 725 ILCS 5/110-6.1(a) (West 2022). Thus, where a defendant appeals a detention decision on the basis that the defendant was not charged with an eligible crime, the issue is a purely legal one, which clearly lends itself to a *de novo* standard of review. See *People v. Caballero*, 206 Ill. 2d 65, 87-88 (2002). This would be the case whether or not live witness testimony is presented at the pretrial detention hearing, contrary to the holding of the majority that the standard of review is dependent on whether live testimony is presented at the hearing. See *supra* ¶¶ 50-51.

¶ 61    Similarly, as the majority acknowledges, all evidence before the circuit court in this case was proffered evidence as the statute allows. See 725 ILCS 5/110-6.1(f)(2) (West 2022). Nevertheless, the first subpart of the majority holding states that, "when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Supra* ¶ 54. Although our decision in this case is undertaken pursuant to the public interest exception to the mootness doctrine, a holding that is not required by the facts of the case before us is advisory in nature and thus improper. See *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408 (1990) (an advisory opinion results if the court resolves a question of law that is not presented by the facts of the case). Because the facts of this case do not present a situation where live testimony was presented, our holding should not address that situation.

¶ 62    Here, defendant raises one claim of error with respect to the circuit court's detention decision. He argues the circuit court erred in denying him pretrial release "because the State failed to establish by clear and convincing evidence that no condition or combination of conditions of release would mitigate the real and present threat he posed to the community." 2024 IL App (4th) 240103, ¶ 2. This is the issue to which our determination of the appropriate standard of review pertains and the only issue for which the court is tasked for determining the appropriate standard of review. Thus, it is with respect to this issue alone that we must consider the appropriate standard of review.

¶ 63                          1. *De Novo* Standard of Review Is Improper

¶ 64       Reviewing courts employ the *de novo* standard of review to decisions of the circuit court on issues that are purely legal, in that they present a question of law, such as contract or statutory interpretation, or require application of a legal proposition to the undisputed facts of record. See, *e.g.*, *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17 (statutory interpretation is a question of law, subject to *de novo* review); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (the interpretation of a contract involves a question of law, which we review *de novo*); *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 172-73 (2011) (*de novo* standard of review concerns the application of law to undisputed facts). The appellate court is principally designed to undertake such tasks, and the circuit court is in no better position to undertake them than is the appellate court because no questions of fact are required to be resolved. See *People v. Taylor*, 237 Ill. 2d 356, 378 (2010) (circuit court in a better position to resolve disputed questions of fact and make credibility determinations).

¶ 65       As the cases cited by the majority suggest, by the same analysis, when the task is to determine whether the facts, as presented through documentary evidence, meet a particular legal standard and thus mandate a certain result, similar considerations mandate a *de novo* standard of review. However, the following examination of these cases illustrates an important contrast with the analysis required by the issue raised in the case at bar.

¶ 66       In *Cleeton v. SIU Healthcare, Inc.*, 2023 IL 128651, the issue was whether the circuit court erred in converting a physician who had been named a respondent in discovery to a party defendant in a medical malpractice case. In making its decision, the circuit court considered the depositions that had been taken in discovery, as well as other documentary evidence, to assess whether there was probable cause to believe that the defendant was legally liable for plaintiff's injuries. *Id.* ¶ 26. To use the language of the majority, the circuit court was called upon to make a " 'binary' " determination, in that, if the probable cause standard was met, the circuit court was required to grant plaintiff's motion to convert and, if the standard was not met, the law required plaintiff's motion be denied. See *supra* ¶ 28 (quoting *People v. Wells*, 2024 IL App (1st) 232453, ¶ 38 (Lampkin, J., specially concurring)).

¶ 67        Similarly, in *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 448 (2009), the issue was whether two boys' injuries were separate "occurrences" within the meaning of a liability insurance policy. The relevant facts were undisputed—two boys came to a sand pit and were trapped moments apart. *Id.* at 450. The circuit court was called upon to determine whether, based on the facts as set forth in the documentary evidence before it, there were two occurrences, and this determination carried a legally mandated result under the insurance policy. *Id.* at 455. If these facts presented a single occurrence within the definition in the policy, then only one claim could be made; otherwise there could be two claims. *Id.* at 450. Again, this was a "binary" determination based on application of the law to the undisputed facts because only two possibilities existed—there was either one occurrence or two based on the documentary evidence. Because the circuit court was in no superior position than the reviewing court to determine, based on the documentary evidence, whether there was one occurrence or two, the *de novo* standard of review was appropriate. *Id.* at 453.

¶ 68        Moving on to *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶¶ 12-18, the decision under review was one of personal jurisdiction over a nonresident defendant, requiring plaintiff to establish that defendant had contacts with Illinois that were so substantial that it was fair to consider Illinois defendant's home state. The facts were not in dispute, and while several factors could be considered in making the determination, the legal conclusion was mandated based on the outcome of the determination. *Id.* If the "substantial contacts" standard was met, the circuit court had jurisdiction, but if not, dismissal of plaintiff's complaint was required—a binary legal determination to be made based on a documentary factual record.

¶ 69        Examples of the application of solely documentary evidence to the law, upon which a specific outcome is legally mandated (*i.e.*, a binary determination), can be found in criminal cases and suits in equity as well. In *People v. Radojcic*, 2013 IL 114197, ¶ 1, documentary evidence in the form of grand jury transcripts was considered to determine whether the crime-fraud exception to the attorney-client privilege applied. If it did, an attorney could be required to testify to communications with the attorney's former client. *Id.* ¶ 28. However, if the content of the transcripts did not indicate that the attorney was engaged in crime or fraud with the former client, the attorney could not be so compelled. *Id.* ¶ 27. A similar

example based on a determination of whether a client waived the attorney client privilege by volunteering information in a deposition can be found in *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 20. The appellate court was in the same position as the circuit court to determine, from deposition transcripts, whether the waiver occurred, and that finding determined the "binary" issue of whether the communications between a client and attorney were privileged. See *id.* ¶ 76. Thus, a *de novo* standard of review was appropriate. See *id.* ¶ 65.

¶ 70    The century-old equity cases cited by the majority fit this theme of *de novo* review as well. In *State Bank of Clinton v. Barnett*, 250 Ill. 312, 313-16 (1911), the issue was whether a creditor met its burden to prove a donor's gift to a third party was "fraudulent in fact" such that the creditor could recover from the third party in satisfaction of a debt the transferor owed to the creditor. The appellate court employed a *de novo* standard of review, noting it was in the same position as the court below to make the determination because the evidence in the case consisted of sworn statements that had been transcribed for the trier of fact. *Id.* at 315. If the evidence was sufficient to show that the gift was voluntary, the gift was made at a time the donor was indebted to the creditor, and the gift rendered the donor insolvent, the creditor could recover. *Id.* at 317-18. If the evidence was insufficient, the debtor could not recover. *Id.* at 318-19. Similarly, in *Baker v. Rockabrand*, 118 Ill. 365, 370 (1886), the circuit court reviewed deposition transcripts to determine if they proved that a party made misrepresentations of fact about property such that there was a basis to rescind a land conveyance. Either there was a misrepresentation such that recission was appropriate, or there was not, in which case there could be no recission. *Id.* at 372-73.

¶ 71    The inquiry the circuit court was called upon to make in this case is considerably different from those described above. In the cases cited by the majority, the circuit court was called upon to consider the factual record as presented by documentary evidence, to make a finding of historical fact thereon, and to apply the law to that factual finding to determine whether a "binary" legal standard had been met. Here, the circuit court must consider proffered evidence and then determine, based on that evidence, whether it is "clearly convinced" that no condition or combination of conditions of release would mitigate the risk to the victim and community posed by defendant. See 725 ILCS 5/110-6.1(e) (West 2022). Rather than using the proffered evidence to make determinations of

historical facts that relate to an objective legal standard, as in the cases cited by the majority, the circuit court must make an assessment involving future likelihoods and risk mitigation, while considering a plethora of alternative conditions of release and combinations thereof. There is no particular conclusion that is objectively mandated by the circuit court's review of the evidence proffered by the State, and thus, the issue of whether any condition or combination of conditions would mitigate the risk to any person or the community is in no way "binary" as the majority suggests.

¶ 72        The subjective nature of the determination of whether a specific condition or combination of conditions of release will mitigate any risk posed by defendant is evident by the language of section 110-5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-5 (West 2022)), which sets forth the factors that the circuit court must consider, in addition to other factors it deems "to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior" (*id.* § 110-5(a)(6)(L)). Subsection (f)(7) of section 110-6.1 of the Code provides that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7). Thus, while the determination being made by the circuit court is based on proffered evidence, the Code contemplates an array of potential outcomes that may result from the evidence, while predicating pretrial detention on subjective findings that allow, but do not require, that a defendant be detained pretrial. This is a far cry from the binary outcome required by the application of undisputed facts to an objective legal standard upon which *de novo* review is based in all the aforementioned cases cited by the majority.

¶ 73        Furthermore, while the appellate court may be in the same position as the circuit court in its ability to review the proffered evidence, the circuit court is in a much better position than is the appellate court to consider whether any condition of pretrial release, or combination thereof, can mitigate the risk defendant poses to any person, or the community, or the risk of willful flight, as the Code may require, depending on the crime charged. See *id.* § 110-6.1(a). Pursuant to the pretrial provisions of the Code, the circuit court is tasked, in all criminal cases, with determining "which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required for the safety of any other person or the

community" as well as to assess the "likelihood of compliance by defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In the absence of a petition to detain, the circuit court is to make these statutorily mandated calculations "on the basis of available information" for each person that is charged with a crime, using the same nonexhaustive list of factors that the circuit court must consider when ruling on a petition to detain. *Id.* Thus, it has become the daily business of the circuit court to make predictive determinations regarding which conditions of pretrial release are necessary to ensure the safety of victims and the community, to ensure appearance by defendants at future proceedings, and to prevent defendants from committing further crimes. In addition, it must make these determinations based on the limited information available to it at the earliest stages of criminal proceedings. As implementation of this system proceeds, circuit courts will continue to develop expertise in making these predictive risk assessments as those circuit courts witness firsthand the relative effectiveness of conditions and combinations of conditions of release. For all these reasons, the *de novo* standard of review, which gives no deference to the findings of the circuit court, is improper here.

¶ 74                    2. Manifest Weight of the Evidence Standard of Review
                                      Is Improper

¶ 75     I agree with the majority that where, as here, the circuit court's decision is based on proffered evidence, there is no credibility issue, which makes the manifest weight of the evidence standard of review improper. However, I additionally note that the manifest weight of the evidence standard of review is inappropriate for the review of the propriety of a circuit court's ultimate determination of whether any condition of pretrial release, or combination thereof, can mitigate the risk posed by a defendant. Under the manifest weight of the evidence standard, a reviewing court defers to the circuit court's findings unless an opposite conclusion is clearly apparent from the evidence or there is no evidence in the record to support the conclusion reached by the circuit court. *People v. Chatman*, 2024 IL 129133, ¶ 34. This standard is applied to factual determinations that the circuit court must make based on a set of legally mandated factors, such as determining whether the best interest of a child is met in cases involving parental responsibility and decision making, guardianship, and termination of parental rights. See *In re Adoption of Syck*, 138 Ill. 2d 255 (1990) (parental fitness determinations); *In re Austin W.*, 214

- 33 -

Ill. 2d 31 (2005) (dispositional orders choosing ward placement between finite alternatives). In addition, it is appropriate when making factual determinations regarding a specifically defined standard, such as a finding of abuse, which is required for the entry of an order of protection under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2022)) or an adjudication of wardship under the Juvenile Court Act 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)). See *Best v. Best*, 223 Ill. 2d 342 (2006). These are questions of current fact that are guided by objective criteria designed to mandate a choice between two finite alternatives. As previously discussed, detention decisions under the Act are not mandated by any specific objective factual finding but are instead prohibited in the absence of specific subjective findings requiring the evaluation of the likelihood of future pretrial outcomes. In addition, as further outlined below, the circuit court is in a superior position to a reviewing court to determine whether any condition or combination of conditions of release can mitigate any risk posed by a defendant.

¶ 76                            3. Abuse of Discretion Standard of Review

¶ 77          The majority, quoting *In re D.T.*, 212 Ill. 2d 347, 356 (2004), characterizes the abuse of discretion standard of review as " 'next to no review at all.' " *Supra* ¶ 23. I disagree with this description. Although this standard of review gives the most deference to the circuit court's decision, this court has rejected the notion that it is a "rubber stamp" of the circuit court's decision. See *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006). " ' "[A]buse of discretion" is a legal term of art; it is not a wooden term but one of flexibility, dependent on the type of case in which it is to be applied and posture of the case when it arises.' " *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 834 (1996) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 814 (4th Cir. 1991)). In employing the abuse of discretion standard of review, a reviewing court does not substitute its judgment for that of the circuit court. *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 74. However, it does ensure that the circuit court exercised its discretion within the bounds of the law and that any factual determinations are supported by evidence in the record. See *People v. Bailey*, 2013 IL 113690, ¶ 25 (the circuit court must exercise its discretion within the bounds of the law); *Schwartz v. Cortelloni*, 177

Ill. 2d 166, 176 (1997) (the circuit court's fact determinations will not be disturbed unless they are unsupported by evidence in the record).

¶ 78    While it is true, as the majority suggests, that the abuse of discretion standard of review is traditionally employed to review decisions of the circuit court in overseeing its courtroom or maintaining the progress of a trial, its use for review of those decisions is certainly not exclusive. Rather, my review of its uses reveals a pattern of use in situations where the decision of the circuit court requires a subjective determination based on balancing statutory or common-law factors that are themselves subjective and, often, forward-looking. For example, a decision to transfer a juvenile delinquency adjudication to adult criminal court is in the discretion of the circuit court, but that discretion is limited and controlled by the Juvenile Court Act. *People v. Morgan*, 197 Ill. 2d 404, 422-23 (2001) (citing 705 ILCS 405/1-1 *et seq.* (West 1994)). In such a proceeding, the circuit court must balance the best interests of the juvenile offender, particularly as they relate to the potential for rehabilitation, against society's legitimate interest in being protected from crimes perpetrated by minors. *Id.* at 424-25. Such decisions are reviewed for an abuse of discretion, and that review includes a determination regarding whether there is evidence to support any findings the circuit court made in reaching the decision. See *id.* at 431.

¶ 79    Another prime example of the use of the abuse of discretion standard of review outside the "courtroom management" paradigm is a circuit court's authority to sentence a criminal defendant. See *People v. La Pointe*, 88 Ill. 2d 482, 491 (1981). In the case of sentencing, review is limited to whether the circuit court considered the appropriate factors in aggravation and mitigation, sentenced the defendant in the appropriate range as prescribed by statute, and imposed a sentence not " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Webster*, 2013 IL 128428, ¶ 21 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

¶ 80    Finally, the decision of the circuit court to enter a temporary restraining order (TRO) is subject to the abuse of discretion standard of review. *Bradford v. Wynstone Property Owners' Ass'n*, 355 Ill. App. 3d 736, 739 (2005). Notably, the decision to grant a TRO depends upon an analysis of future likelihood, requiring the circuit court to determine whether the party seeking the TRO has met its burden

to establish by a preponderance of the evidence that the party (1) possesses a certain and clearly ascertainable right in need of protection, (2) has no adequate remedy at law, (3) would suffer irreparable harm without the TRO, and (4) has a likelihood of success on the merits. *Id.* The decision is made based solely on documentary evidence consisting of the affidavits accompanying the petition and/or in the accompanying verified complaint. See 735 ILCS 5/11-101 (West 2022). In addition, like a pretrial detention decision, the decision of the circuit court is subject to immediate interlocutory appeal. Ill. S. Ct. R. 307(d) (eff. Nov. 1, 2017).

¶ 81    In rejecting the use of the above examples to inform an evaluation of whether the abuse of discretion standard would be appropriate here, the majority focuses on the "burden of proof" the State has to establish defendant's eligibility for pretrial detention "by clear and convincing evidence." See *supra* ¶¶ 32-34. Thus, the State has the burden to present sufficient relevant evidence, by proffer, to enable the circuit court to determine that no condition or combination of conditions can mitigate the risk defendant poses and enough evidence that the circuit court has no reasonable doubt that its conclusion is correct. While the burden of production and persuasion is on the State, the nature of the circuit court's determinative inquiry is not purely factual nor legal. Rather, the determination of whether any condition or combination of conditions can mitigate a risk imposed by defendant requires a reasoned judgment applying the State's proffer to the factors required by the Code concerning appropriate conditions of pretrial release.[8]

¶ 82    As aforementioned, the circuit court, based on its day-to-day experience in imposing conditions of release under section 110-5 of the Code and in witnessing the consequences of its decisions in effectuating the goals of community safety,

_____

[8]While section 110-6.1(e) of the Code makes no reference to section 110-5, that section lists the factors the circuit court is required to consider when determining the appropriate conditions for pretrial release. These factors include the nature and circumstance of the offense charged; the history and characteristics of defendant; any statements defendant has made; and, importantly, "any other factors deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior." 725 ILCS 5/110-5(a)(6)(L) (West 2022). In essence, the determination of the dangerousness and/or risk of willful flight, as the case may be, is inextricably intertwined with the determination of what conditions are necessary and appropriate. Thus, it would be impossible to determine no conditions could mitigate the risk a defendant poses without considering the factors set forth in section 110-5.

court appearances, compliance with conditions, and unobstructed justice (see *id.* § 110-2(e)), places the circuit court in a superior position to the reviewing court in making such assessments.

¶ 83　　This court recently recognized this when it held that the State's burden of proof does not require the circuit court to specifically address every conceivable condition or combination of conditions and explain why each condition does not apply. *People v. Mikolaitis*, 2024 IL 130693, ¶ 20. We concluded, in affirming the circuit court's decision to detain defendant, as follows:

> "Ultimately, it is up to the circuit court to review the evidence presented and determine whether conditions of release would mitigate the safety threat posed by a defendant. [Citation.] Here, the circuit court heard all the evidence and determined that, because defendant failed to comply with his doctor's directives to take his prescribed medication, he would not comply with conditions of release. Accordingly, we find that the circuit court did not err in granting the State's petition to deny pretrial release." *Id.* ¶ 24.

¶ 84　　Our holding in *Mikolaitis*, as well as our reasoning, is not consistent with the majority's decision to employ a *de novo* standard of review based on the fact that the circuit court's decision is based on proffered evidence. In affirming the circuit court's decision in *Mikolaitis*, this court did not independently evaluate the evidence and determine for itself whether any condition or combination of conditions would mitigate the risk posed by defendant. Consistent with our holding in *Mikolaitis*, review of the circuit court's determination should not be disturbed unless the proffered evidence contains no support for the circuit court's assessment, the circuit court used improper criteria under the Code in making its determination, or no reasonable person could have reached its conclusion. The abuse of discretion standard of review encompasses all aspects of the multifaceted inquiry required of the circuit court, while recognizing that it is in a better position than the reviewing court to consider the ability of potential conditions or combinations of conditions of pretrial release to mitigate future risks posed by a defendant.

¶ 85　　For the foregoing reasons, I would hold that the circuit court's determination in detaining defendant, that no condition or combination of conditions would mitigate the risk imposed by him as to any person or the community, is to be reviewed for an abuse of discretion. Because the circuit court's decision was reasonable

considering the evidence of record, I would affirm. Thus, I specially concur.

¶ 86  CHIEF JUSTICE THEIS and JUSTICE ROCHFORD join in this special concurrence.