2025 IL App (1st) 250208

No. 1-25-0208B

June 30, 2025

FIFTH DIVISION

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | 23 CR 12403 |
| v. | ) | |
| | ) | The Honorable |
| WESTON OPAS, | ) | Paul Pavlus, |
| | ) | Judges, presiding. |
| Defendant-Appellant. | ) | |

_____
_____


JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion
Justices Navarro and Mitchell concurred in the judgment and opinion.

## OPINION

¶ 1        Defendant-appellant Weston Opas, by and through private counsel, brings this appeal

challenging the trial court's order, entered December 13, 2024. The order denied defendant's

"motion for release" made pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024).

A "motion for relief" is "a prerequisite to appeal" (Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)),

under what is "commonly known as the Pretrial Fairness Act."[1] *People v. Morgan*, 2025 IL 130626, ¶ 1. This type of motion asks the trial court to reconsider a prior denial of pretrial release. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 2 Under case No. 23-CR-12403, defendant was indicted for (1) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), for which the State sought to sentence him as a Class X offender, in that defendant committed the offense while in possession of body armor (720 ILCS 5/24-1.1(e) (West 2022) ("[a] violation of this Section while *** in possession of body armor *** is a Class X felony punishable by a term of imprisonment of not less than 10 years")), (2) indecent solicitation of a child (720 ILCS 5/11-6(a), (c) (West 2022) (Class 3 felony)), (3) traveling to meet a minor (720 ILCS 5/11-26 (West 2022) (Class 3 felony)), (4) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), (5) unlawful possession of firearm ammunition by a felon (720 ILCS 5/24-1.1(a), (e) (West 2022) ("The possession of each firearm or firearm ammunition *** constitutes a *** separate violation.")), (6) unlawful possession of a shortened rifle (720 ILCS 5/24-1(a)(7)(ii), (b) (West 2022) (Class 3 felony)), (7) violation of the Sex Offender Registration Act (730 ILCS 150/6 (West 2022)), (8) indecent solicitation of a minor (720 ILCS 5/11-6.6(a), (b) (West 2022) (Class 4 felony "when the solicitor believes he or she is 5 or more years older than the child")), and (9) grooming (720 ILCS 5/11-25 (West 2022) (Class 4 felony)).

¶ 3 For the following reasons, we affirm the trial court's order denying defendant's motion for release and affirm the denial of pretrial release.

---

[1] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Pub. Acts 101-652, § 10-255; 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110)).

¶ 4                                         BACKGROUND

¶ 5        Defendant, who was 42 years old at the time, was arrested on October 27, 2023. The felony complaint, filed on October 29, 2023, alleged (1) that defendant solicited J.D., age 16 years old, to commit sex offenses; (2) failed to report, as a prior sex offender, that J.D., a minor, was living at his residence; (3) that defendant traveled from Illinois to Massachusetts to meet with J.D., a child, with the intent to do so for the purpose of engaging in a sex offense; and (4) that defendant, who was convicted of a felony, knowingly possessed body armor at his residence.

¶ 6        On October 29, 2023, the State filed a petition for pretrial detention that alleged:

> "Victim in this case was 15 or 16 years old at the time of the offense. Defendant was approximately 41 to 42 years old at the time of the offense. Defendant met victim online and eventually began online dating. Victim informed defendant that she was 16. Victim and defendant met in person on multiple occasions in Massachusetts and in Glenview, Illinois. On October 14, 2023, the victim left Massachusetts and went to Glenview, Illinois. Athol, Massachusetts police pinged her cell phone, which pinged at the defendant's residence. Cook County Sheriff's [Office] conducted a search warrant [*sic*] at the defendant's residence. Defendant was placed into custody. Victim was located at his residence. An assault rifle and body armor [were] located under the Defendant's bed. Victim admitted to having sexual contact with the defendant."

¶ 7        On October 29, 2023, defendant was ordered detained. In the written pretrial detention order, entered after a pretrial detention hearing, the trial court found that the proof was evident or the presumption great that defendant had committed an eligible offense based on the "[e]xecution of the search warrant" and the discovery of the assault rifle under defendant's bed and the body armor found in the home. The court found that defendant posed a real and present threat to the safety of persons in the community, where he "possessed an assault rifle while committing the alleged acts of grooming and traveling to meet a minor, while also out on release for sex offender on school property. [Defendant] has a prior child porn conviction [and] ongoing criminal acts while in possession of a weapon."

¶ 8          The court further found that no condition or combination of conditions can mitigate the real and present threat that defendant posed to the safety of persons in the community, where he was "currently on bond for a sex offender on school grounds. [Defendant] did not follow [his] terms of pretrial release/bond. [There were] [o]ngoing acts, including possession of weapon while on bond and a felon." On November 28, 2023, defendant was indicted for the nine counts listed above (*supra* ¶ 2). On December 7, 2023, an assistant public defender entered an appearance for defendant.

¶ 9          On April 18, 2024, private counsel filed an appearance, and the public defender was granted permission to withdraw. On May 1, 2024, counsel filed a motion for release, which argued, among other things, that defendant has a masters in science, that he had the support of friends and family, that he was a drone pilot for insurance and real estate companies, that he had only one felony conviction over 20 years ago, that "DCFS on previous occasions investigated" defendant and the "outcome was that he was given custodial rights of his daughter," and that pretrial services recommended "2-2 with electronic monitoring."

¶ 10         On May 3, 2024, the State filed a petition for pretrial detention, in which it alleged that the proof was evident of a forcible felony and a sex offense, that defendant posed a real and present threat, and that no combination of conditions could mitigate that risk. With respect to the threat, the State attached a page that stated:

> "To wit: Defendant is charged—inter alia—Class X (i.e. nonprobationable unlawful use of a weapon by a felon, indecent solicitation of a minor with intent to commit aggravated criminal sexual abuse; traveling to meet a minor; violation of the sex offender registration act; grooming. Defendant is separately charged under 23 CR 1107901 with prohibited presence within a school zone by a child sex offender. Defendant was previously convicted (2004) in Florida with possession of obscene material-child pornography. The 42-year old defendant was living with the victim in the instant case at the time of his 10/27/23 arrest. The juvenile victim—who had been reported missing from her Massachusetts home—was 16 years old at the time of

defendant's arrest. Cook County Sheriff's police were contacted by a Massachusetts Police dept. regarding the location of the juvenile victim's cell phone (which had been pinging to the address of defendant's residence). A neighbor of defendant confirmed for police that the neighbor saw the juvenile victim at defendant's residence. A subsequently obtained search warrant executed at defendant's residence revealed the juvenile victim, weapons, ammunition and body armor. The juvenile victim admitted in a forensic interview that she had sexual intercourse with defendant and referred to him as her boyfriend. Defendant had purchased the airline ticket for the juvenile victim to travel to O'Hare Airport from Massachusetts. Defendant picked her up from O'Hare Airport. Conversations between defendant and victim (in tendered discovery) reveal an ongoing and intimate relationship between defendant and the juvenile victim including in the weeks prior to defendant's arrest. For example, on 10/9/23, between 7:02 a.m. and 7:35 a.m., defendant and victim discuss specific instances of sextual gratification between the two."

¶ 11    On May 15, 2024, the trial court entered a written pretrial detention order, after holding a pretrial detention hearing. The court found that the proof was evident of the offenses of possessing a firearm as a felon, indecent solicitation, and traveling to meet a minor. The court found defendant posed a real and present threat to "any and all young underage girls" and noted that defendant was also "charged with child sex offender/school zone" under case No. 23-CR-1107901. The court found that no condition or combination of conditions could mitigate the threat defendant posed, where electronic monitoring "would not protect women from" defendant, where defendant has "demonstrated he will not follow conditions," and where he "does not keep current with sex registration."

¶ 12    On September 20, 2024, defendant filed an "Amended Second Motion for Release." The amended motion added that, in the prior detention hearings, it was assumed that defendant was charged with a Class X felony, but he was not; that possession of body armor by a felon is a Class 3 felony; that, in the event that possession of armor by a felon is a Class X felony, "the statute is unconstitutional as violative of the proportionate penalties clause and void for vagueness"; that counts I, IV, and V for possession of a weapon by a felon violate

the second amendment; and that inmates are "harassing and threatening violence upon" defendant. Defendant did not dispute the factual allegations underlying the present charges.

¶ 13 On Friday, September 20, 2024, the parties met in person and defense counsel, at first, asked for a two-week extension for the detention hearing, to which the State and the trial court agreed. However, the case was recalled for a hearing. The trial judge started the hearing by observing that he was "not the judge in this case," that he was here because the assigned judge was out, that the assigned judge would be back on Monday, but that if defense counsel wanted to hold the detention hearing today and the State was fine with it, then he would hold it. Defense counsel asserted that defendant was being harassed and threatened in jail. The judge stated that he had read the files and defendant's motion.

¶ 14 The State reiterated the information that it had alleged in its prior petition (*supra* ¶ 10). The State further explained that defendant was convicted in 2004 in Florida of possession of child pornography and, as a result, was required to register as a sex offender and to not be around school property. In case No. 23-CR-1107901, defendant picked up his daughter at an elementary school in Glenview, and the school secretary saw defendant in the pick up line. The school principal told police that she had e-mailed defendant with pick up and drop off instructions that had included a map. Nevertheless, defendant violated the terms and was arrested on September 15, 2023.

¶ 15 The State explained that, a few weeks later, the Cook County Sheriff's Office was contacted by a Massachusetts police department regarding the location of a 16-year old girl whose cell phone was pinging to defendant's address. Defendant's neighbor confirmed for police that she had observed the girl at defendant's residence. The police obtained a search warrant, and the subsequent search revealed the presence of the juvenile victim, as well as

weapons, ammunition, and body armor. During a forensic interview, the juvenile victim admitted that she had sexual intercourse with defendant and referred to him as her boyfriend.

¶ 16    The State proffered that defendant had purchased the airline ticket for the juvenile victim to travel from Massachusetts to O'Hare Airport, where he picked her up. Defendant was arrested again on October 27, 2023. The trial court interrupted to clarify that defendant was out on release from the first case when he was arrested on the second case, and the State confirmed that this was so.

¶ 17    The State proffered that there were conversations between defendant and the victim going back months, which included graphic exchanges between the two of them. The State explained that it was seeking to sentence defendant as a Class X offender, since he committed the offense of unlawful possession of a firearm by a felon while also in possession of body armor. The State stated that the sentencing range for that offense was 10 to 40 years. The State noted that there were additional compelling charges of indecent solicitation of a minor and traveling to meet a minor.

¶ 18    The State argued that there was no condition or combination of conditions that could protect either the victim or other children to whom defendant posed a clear and present danger. The State argued that electronic monitoring would not stop defendant from having contact with minors in his house. The State further argued that the judge assigned to the case had "heard, essentially, the same facts" at the prior detention hearing on May 15, 2024, when detention was ordered and that defendant's present allegations that he was being harassed in jail did not change the basis for the court-ordered detention.

¶ 19    In response, defense counsel argued that all the charges were Class 3 or 4, and hence probationable offenses, except for the one Class X charge related to the body armor. Defense

counsel argued that possession of body armor being classified as more serious than possession of a firearm was a "prima facie disproportionate penalty." Defense counsel explained that he had already filed a motion with the disproportionate penalty argument before the other judge, who had not yet ruled on it. Defense counsel argued that the grand jury transcript and the police report made clear that the armor was not being used, so that this was a case of simple possession. As a result, counsel argued that it should not be considered Class X in this situation.

¶ 20    Defense counsel asserted that the prior felony, committed 22 years ago, was also a case of simple possession of contraband. Defense counsel contended that, per the second amendment, a felon like defendant cannot be deprived of his right to possess a gun forever and, thus, all the weapon and armor charges against defendant should fail. Counsel contended that the victim in this case lived out of state and that the court could order, in addition to electronic monitoring, that defendant may not access the Internet or have visits.

¶ 21    After hearing argument, the court found that the proof was evident and the presumption great that defendant had committed a detainable offense. The court ruled that it was not getting into the disproportionate issue because that was in a motion pending before another judge. The judge stated that the information that he had was that defendant was a Class X offender and that defendant had the 2004 case from Florida, plus the new school case (No. 23-CR-1107901) for which he had been arrested on September 15, 2023. The judge observed that defendant was in a "not detained" situation but not following the rules. While on a "non-detained status" after his arrest on September 15, 2023, defendant committed the case involving the body armor, guns, and sexual conduct with a 16-year old.

¶ 22        The court found defendant to be a danger where, as a 42-year-old man, he flew a 16-year-old at his expense to engage in sexual conduct and "[t]hat 16-year old child calls him, the 42-year old man, my boyfriend." The court stated that protecting the community meant protecting 16-year-olds who "can't make those choices." The court found that defendant was a danger to the victim and "a danger to the community at large."

¶ 23        The court found that electronic monitoring would not stop defendant from getting in a car and going where he wants. The monitoring might permit the State to track where he went if he wore the monitoring band, but that monitoring was "not preventative," and the girl could come to him. The court observed that it was still up to defendant to follow rules and "[h]e didn't follow those."  Based on the foregoing reasons, pretrial detention was continued.

¶ 24        On October 9, 2024, the parties appeared before the judge to whom the case was assigned and the judge observed that defendant had filed two pretrial motions, as well as an amended second motion for relief (filed on September 20), and that the State had responded to the amended second motion. The State noted that another judge had already heard the motion for relief, but the court asked when counsel wanted "to argue all three of those motions." The case was then scheduled for October 31, 2024. Although we have no transcript for October 31, notes on the half-sheet indicate that a hearing was held and that defendant's motion based on his alleged right to bear arms was denied. Several "remain in custody" orders were entered on October 31, November 20, December 5, 9, and 11, 2024, and the case was continued each time.

¶ 25        On December 13, 2024, the parties and the court appeared in person, and the court stated that the purpose of the hearing was to address defendant's proportionate penalties clause arguments. Defense counsel argued that it was a disproportionate penalty where

simple possession of body armor was subject to a greater penalty than possession of a gun. In response to defendant's argument regarding "mere" possession, the State noted that the body armor was found with an assault rifle and ammunition under the bed when defendant was committing sex offenses. The State also argued that the Illinois Supreme Court had rejected defendant's argument in *People v. Sharpe*, 216 Ill. 2d 481, 516-17 (2005), where the supreme court had abandoned the cross-comparison analysis of offenses with different elements when considering a proportionate-penalties clause claim. The trial court stated that it agreed with the State and that, largely based on *Sharp*, it had to deny defendant's motion.

¶ 26    On January 14, 2025, defendant filed a notice of appeal titled "Notice of Appeal Bail Review," in which he generally alleged that the State had failed to show that defendant was a danger, that defendant had support from the community and friends, that the State failed to show there were no less restrictive alternatives, and that the most severe offense was based on unconstitutional statutes.

¶ 27    On February 4, 2025, defendant filed another and more detailed notice of appeal, which was titled "Notice of Appeal From Order Under Pretrial Fairness Act Pursuant to Illinois Supreme Court Rule 604(h)." First, he alleged that State had failed to meet its burden regarding the charged offenses where the police alleged that the body armor was found in a dresser drawer and this did not show that he possessed it or a weapon; where this charge "is a disproportionate penalty"; and where his status as a felon is based on a 20-year-old conviction and, thus, violates the second amendment. Second, he alleged that the State failed to meet its burden of proving that defendant is a threat where he holds a master's degree and has no violent felonies and where the victim "was very near the age of consent." Lastly, he

alleged that the State and the court failed to explore other conditions as an alternative to detention.

¶ 28 Defendant appeared to exercise his right under the amended Rule 604(h) to not file an appellate brief and stand on the proceedings below. Rule 604(h) has been amended to provide that "[t]he motion for relief will serve as the argument of the appellant on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). "Issues raised in the motion for relief are before the appellate court regardless of whether the [defendant's] optional [appellate] memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). The State filed its timely appellate memo, 21 days after defendant's optional memo was due. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (the State may file an appellate memo "within 21 days of the time for filing" the defendant's memo). After the State filed its appellee brief, defendant filed a motion for an extension of time to file an "opening" brief. Defendant's untimely motion was filed three weeks after defendant's brief was due and was denied.

¶ 29 ANALYSIS

¶ 30 For the following reasons, we exercise *de novo* review and affirm the trial court's denial of defendant's motions for pretrial release

¶ 31 I. Standard of Review

¶ 32 Regarding the standard of review, our supreme court has held that,

"when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1 [(725 ILCS 5/110-6.1 (West 2022))], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54.

¶ 33          However, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54. The supreme court stated that *de novo* review means that the reviewing court "grant[s] no deference to the decision of the circuit court." *Morgan*, 2025 IL 130626, ¶ 22. The supreme court stressed that "the reviewing court stands in the same position as the circuit court." *Morgan*, 2025 IL 130626, ¶ 21.

¶ 34          In the case at bar, since no live witness testimony was presented, our standard of review is *de novo*, and we stand in the same position as the trial court when reviewing the record.

¶ 35                              II. The Three Questions

¶ 36          When a defendant has been charged with a detainable offense, and the State has filed a petition for pretrial detention, the court must "make a factual determination as to whether the State presented clear and convincing proof that (1) the defendant likely committed the detention-eligible offense, (2) the defendant is dangerous, and (3) no conditions could mitigate defendant's dangerousness or risk of flight." *Morgan*, 2025 IL 130626, ¶ 41; 725 ILCS 5/110-6.1(e) (West 2022). If the answer to these three questions is " 'yes,' the court may detain the defendant." *Morgan*, 2025 IL 130626, ¶ 41. All defendants are "presumed eligible for pretrial release," and so it is the State that bears the burden of overcoming this presumption. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 37          To quote the statute, the State must satisfy three factors "by clear and convincing evidence": (1) that "the proof is evident or the presumption great that the defendant has committed" the charged offense; (2) that the defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the

case"; and (3) that "no condition or combination of conditions *** can mitigate" either the risk of the defendant's "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" or the risk of his "willful flight." 725 ILCS 5/110-6.1(e) (West 2022). The court may consider a variety of factors in making a determination of dangerousness, which may include, but are not limited to, the nature and circumstances of the charged offense, the history and characteristics of the defendant, and "[w]hether the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g)(1), (2), (7) (West 2022). Now that we must undertake the same review as the trial court, these statutory requirements and factors apply equally to the appellate court.

¶ 38    To satisfy its burden, the State "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022); *Morgan*, 2025 IL 130626, ¶ 26. Similarly, the defendant may counter with evidence by way of proffer. 725 ILCS 5/110-6.1(f)(2) (West 2022).

¶ 39                                    III. The Charges

¶ 40    Section 110-6.1 authorizes denial of pretrial release for certain types of offenses. 725 ILCS 5/110-6.1 (West 2022). We will discuss below the ones relevant to this case.

¶ 41    First, the trial court may deny pretrial release if the defendant is charged with a felony offense, for which, based on the charge, a sentence of imprisonment, without probation, is required by law upon conviction. 725 ILCS 5/110-6.1(a)(1) (West 2022). This would include count I of defendant's indictment, where the State charged unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), and stated that it shall seek to sentence him as a Class X offender, in that he committed the offense while in possession of body armor (720 ILCS 5/24-1.1(e) (West 2024) ("[a] violation of this Section while *** in possession of body

- 13 -

armor *** is a Class X felony punishable by a term of imprisonment of not less than 10 years")).

¶ 42    Second, defendant is charged with two additional counts of unlawful possession of a weapon by a felon, which also qualify. 725 ILCS 5/110-6.1(a)(6)(O)(i) (West 2022).

¶ 43    Third, defendant is also charged with multiple counts under article 11 of the Criminal Code of 2012, namely, count II, indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2022)); count III, traveling to meet a minor (720 ILCS 5/11-26 (West 2022)); count VIII, indecent solicitation of a minor (720 ILCS 5/11-6.6(a), (b) (West 2022)); and count IX, grooming (720 ILCS 5/11-25 (West 2022)). 725 ILCS 5/110-6.1(a)(5) (West 2022) (detainable offenses include when "the defendant is charged with any offense under Article 11 of the Criminal Code of 2012," except for certain offenses not at issue here).

¶ 44    For all three categories listed above, the State must also allege that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. The State has so alleged, and we will discuss these allegations in greater detail in the next section.

¶ 45    During the pretrial detention hearings, defendant argued that certain statutes, under which he was charged, were unconstitutional. Pretrial detention hearings are not the place to resolve the constitutionality of criminal statutes; that was never the intent of the Pretrial Fairness Act (Act) (Pub. Acts 101-652, § 10-255; 102-1104, § 70 (eff. Jan. 1, 2023)). *Supra* ¶ 1. The Act could not have been more clear. With respect to the statute itself under which a defendant is charged, all the State has to allege, and all the court has to find, is that the defendant was "charged with" an offense under that statute. 725 ILCS 5/110-6.1(a) (West 2022). Subsection (a) of section 110-6.1 lists the statutory offenses that are eligible for pretrial

detention, and each and every subsection states simply that the defendant must be "charged with" it. 725 ILCS 5/110-6.1(a) (West 2022). That was so here, where defendant was charged by indictment.

¶ 46 When the legislators wanted to provide limited circumstances under which a defendant could raise certain specified constitutional challenges, they clearly stated as much. For example, the amended Code explicitly provides that, although a defendant may not move to suppress evidence or a confession at a pretrial detention hearing, he or she may argue that a search, seizure or interrogation was unlawful, and that the court may consider the alleged unlawfulness of the evidence in weighing the State's case. 725 ILCS 5/110-6.1(f)(6) (West 2022). There is no such authorization for the consideration of the alleged unlawfulness of the charging statute.

¶ 47 Even if we were going to consider defendant's constitutional arguments, we would not find them persuasive. With respect to the gun offenses, defendant argued in the court below that the charges violated his second amendment rights by prohibiting felons, such as himself, from ever possessing a gun. We would not find this argument persuasive, for reasons that we already explained in *People v. Melton*, 2025 IL App (1st) 231935-U, ¶ 18 ("second amendment's right to bear arms does not apply to felons"), *People v. Boss*, 2025 IL App (1st) 221855, ¶ 36 (noting that every Illinois court that has considered the issue thus far has found the unlawful possession of a felon statute constitutional on its face), and *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37. With respect to the body armor, defendant argued that the penalty was disproportional. We would not find this argument persuasive for the same reason that the State argued below and that the trial court found below, namely, because defendant's attempt to compare offenses containing different elements (*i.e.* body armor vs. gun) is an approach that

our supreme court already rejected in *Sharpe*, 216 Ill. 2d at 516-17 (abandoning cross-comparison analysis of offenses with different elements when considering proportionate-penalties-clause claims). Thus, even if defendant's constitutional challenges to the charging statutes were properly before the court during a pretrial detention hearing, we would not find them persuasive.

¶ 48                                   IV. The Three Factors

¶ 49                                   A. Proof Evident

¶ 50       First, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "the proof is evident or the presumption great that the defendant has committed" the charged offenses (725 ILCS 5/110-6.1(e) (West 2022)). The State proffered evidence of defendant's prior conviction; the discovery, during the execution of an unchallenged search warrant, of a shortened rifle, ammunition, and body armor under defendant's bed; defendant's Internet solicitation of a child and his subsequent payment for her to travel from Massachusetts to Illinois; her age at the time of the offense; the police's discovery of the child in his home during the execution of the search warrant; and the child's statement during a forensic interview that she had sexual intercourse with defendant and considered the 42-year-old defendant to be her boyfriend. Defendant did not challenge these facts at the detention hearings.[2] Therefore, for purposes of today's review, this point is satisfied. However, we must hasten to add that this finding has no effect, whatsoever, on what might later be proven at a trial and found by a fact finder.

¶ 51                                   B. Dangerousness

---

[2]At one point, defendant argued that the body armor was found in a dresser drawer in defendant's bedroom rather than under the bed. However, even if true, this fact does not alter our analysis of possession.

¶ 52    Next, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that the defendant "poses a real and present threat to the safety of *** the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 53    On October 29, 2023, when defendant was originally detained, the trial judge found that defendant posed a real and present threat to the safety of persons in the community where he "possessed an assault rifle while committing the alleged acts of grooming and traveling to meet a minor, while also out on release for [being a] sex offender on school property." The court noted that defendant committed "ongoing criminal acts while in possession of a weapon." The court further found that no condition or combination of conditions could mitigate the danger that defendant posed, where he was "currently on bond for sex offender on school grounds" and did not follow the terms of his pretrial release.

¶ 54    On May 15, 2024, a different trial judge found that defendant posed a real and present threat to "any and all young underage girls" and noted that defendant was also "charged with child sex offender/school zone" under case No. 23-CR-1107901. The court found that no condition or combination of conditions could mitigate the threat defendant posed, where electronic monitoring "would not protect women from" defendant, where defendant has "demonstrated he will not follow conditions" and where he "does not keep current with sex registration."

¶ 55    On September 20, 2024, yet a third trial judge found the 42-year-old defendant to be a danger where he flew a 16-year-old girl at his expense to engage in sexual conduct and "[t]hat 16-year old child calls him, the 42-year old man, my boyfriend." The court stated that protecting the community meant protecting 16-year-olds who "can't make those choices." The

court found that defendant was a danger to the victim and "a danger to the community at large." In terms of imposing conditions, the court noted that defendant was not detained after his arrest on September 15, 2023, for the school zone offense, and yet defendant still committed the case involving body armor, guns, and sexual conduct with a 16-year-old.

¶ 56    Although we exercise *de novo* review, we find ourselves in agreement with all three trial judges. First, defendant has demonstrated, through his Internet solicitation, that he poses a danger to the victim here and to all similarly situated underage girls. Second, defendant has demonstrated that he has the means, both in communication ability and financially, to lure and transport girls to his home.

¶ 57    Third, he committed the grooming and solicitation offenses charged here while in possession of a shortened rifle, ammunition, and body armor. Section 110-6.1(g)(7) provides that one of the factors to be considered in making a determination of dangerousness is whether "the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g)(7) (West 2022). In light of the fact that the rifle, ammunition and body armor were found under his bed, the answer to the question of whether he has access to any weapon is a resounding yes.

¶ 58    Fourth, another factor that the statute asks us to consider when determining dangerousness is whether, at the time of the current offense, the defendant was already on release from another offense. The answer to that question is also yes. Shortly after being arrested and released for being present on school grounds as a previously convicted sex offender, defendant was arrested again for this case involving a rifle, ammunition, body armor, and a missing 16-year old girl from Massachusetts.

¶ 59    All of the above factors, both the ones we cite and the ones the trial judges mentioned, demonstrate defendant's dangerousness and outweigh the factors mentioned by the defense. Defendant's support from family and friends, his master's degree, and his employment do nothing to lessen the threat that he poses to the underage victim in this case or to similarly situated underage girls who may be reached online, as this one was. Defendant's allegation that he was being threatened and harassed in jail contained no details, specifics, or supporting evidence. It also did not undercut the basis for the detention. Thus, we find the dangerousness factor satisfied.

¶ 60                            C. No Conditions

¶ 61    Finally, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "no condition or combination of conditions *** can mitigate" the risk of the defendant's "real and present threat to the safety of *** the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 62    There is no condition or combination of conditions that could mitigate the risk here where—as all three trial judges found and we agree—defendant does not abide by conditions imposed. Defendant was released after his arrest on September 15, 2023, for the school zone offense and yet was arrested a little over a month later while still on release for a case involving body armor, guns, and sexual conduct with a 16-year-old. Electronic monitoring does nothing to prevent him from soliciting online, as he did here, or from luring girls to his home, as he also did here. Conditions such as restricting online access or at-home visitors, which defense counsel suggested, are notoriously difficult to enforce under the best of circumstances, but they make little sense where defendant has demonstrated an unwillingness to abide by similar

conditions. One of the charges, for which defendant was indicted by a grand jury, is for violation of the Sex Offender Registration Act (730 ILCS 150/6 (West 2022)), by failing to "report in person, with the Glenview Police Department within 3 days of residing with a child under the age of 18 who is not his own child." Thus, no condition or combination of conditions can mitigate the threat that defendant poses.

¶ 63　　　Having considered all three questions separately and independently, we find that the answer to all three is "yes." See *Morgan*, 2025 IL 130626, ¶ 41 (if the answer to these three questions is " 'yes,' the court may detain the defendant").

¶ 64　　　　　　　　　　　　　　　　CONCLUSION

¶ 65　　　For all the foregoing reasons, and having conducted a thorough and *de novo* review of the record before us, we affirm the trial court's orders denying defendant's motions for relief and affirm the trial court's denial of pretrial detention.

¶ 66　　　Affirmed.

***People v. Opas*, 2025 IL App (1st) 250208**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CR-12403; the Hon. Paul Pavlus, Judge, presiding. |
| **Attorneys for Appellant:** | Jason R. Epstein, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Karen Kerbis, Special Assistant State's Attorney, of counsel), for the People. |